UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD BENNETT,

        Plaintiff,                  Case No. 1:10-cv-273

v.                                     Honorable Gordon J. Quist

A.L. WRIGHT et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed because Defendants Wright and Stapleton are immune and the complaint otherwise fails to state a claim upon which relief may be granted.

**Discussion**

    I.    <u>Factual allegations</u>

Plaintiff is incarcerated in the Gus Harrison Correctional Facility, but the events giving rise to his complaint occurred at the Lakeland Correctional Facility (LCF). In his *pro se*

complaint, Plaintiff sues LCF Corrections Officer Russ Wattles. He also sues Michigan Department of Corrections Hearing Officer A.L. Wright and Hearings Administrator Richard Stapleton.

Plaintiff's action concerns major misconduct convictions arising from an incident that occurred on February 18, 2009. Defendant Wattles brought major misconduct charges against Plaintiff for: (1) out of place, (2) theft and (3) disobeying a direct order. Wattles described the violation as follows:

> On 2/18/2009 I observed Bennett 148380 walk into room G-114 and proceed to the staff coffee pot. Bennett started to pour a cup of coffee. I said to Bennett "stop that is staff coffee"[.] Bennett kept pouring until the cup was full. Bennett had no staff authorization to enter room G 114. Bennett was identified by his M.D.O.C, identification card and prior contact.

(2/18/09 Major Misconduct Report, Ex. 1, docket #1.)

An administrative hearing was held on March 10, 2009. (*See* 3/10/09 Major Misconduct Hr'g Report, Ex. 2, docket #1.) Plaintiff pleaded not guilty to the charges and maintained that he had previous authority to take coffee from the bottom of the pot. Hearing Officer Wright found Plaintiff not guilty of the out of place charge because Plaintiff worked for Hearings Investigator Landrum and had his permission to be in room G-114. Wright, however, found Plaintiff guilty of the remaining two charges. He provided the following reasons for his decision:

> Theft:
> HO finds that Prisoner possessed a cup of coffee in his hand. The evidence shows that prisoner did not have the authorization of the owner, Krueger, Landrum, or Wattles, to possess the property. The evidence shows that prisoner poured the coffee from the coffee pot without authorization. Therefore, the charge of (037) Theft; Possession of Stolen Property is upheld.
>
> Disobeying a Direct Order:
> HO finds that the greater impression of the evidence is that on 2/18/09 officer gave prisoner a reasonable order to stop pouring staff coffee. HO finds that Prisoner knew the order was given to him because prisoner admits that he heard the order. HO also finds that prisoner voluntarily failed to follow the order by continuing to pour after

the order was given.  Prisoner states that there was between ½ to 3/4 cups of coffee in the cup.

(*Id*.)  As a result of his convictions, Plaintiff was given ten days loss of privileges.

Plaintiff submitted a request for rehearing claiming that the hearing officer failed to make a determination on the record regarding the reporting officer's failure to provide a photograph of the cup of coffee.  (*See* Request for Rehearing, Ex. 3, docket #1.)  According to Plaintiff, a photograph would have supported his contention that he followed the officer's order and did not fill the cup.  Plaintiff further claimed that the hearing officer's decision was not based upon substantial, competent and material evidence because the hearing officer refused to remand the matter to obtain a photograph of the coffee pot and to view the size of the spout.  In addition, Plaintiff asserted that the hearing officer considered statements from Krueger and Landrum that were not on the record and he was not afforded the opportunity to question them regarding their statements.  Defendant Stapleton denied Plaintiff's request for rehearing.

Plaintiff sought review of the misconduct convictions in the Wayne County Circuit Court, but the court dismissed his petition because Plaintiff did not reside in that county.  Plaintiff appealed to the Michigan Court of Appeals, but he was unable to pay the initial partial filing fee and his case was dismissed.  Plaintiff subsequently sought leave to appeal in the Michigan Supreme Court.  The supreme court denied his application on February 26, 2010, because it was not persuaded that the questions presented should be reviewed by the court.

Plaintiff now raises the follow constitutional claims concerning his misconduct convictions:

   a. Plaintiff was denied his State and Federal constitutional rights to due process, equal protection and a fair hearing when Defendant Wright acting as hearing officer, failed to (1) present Plaintiff with an opportunity to question witnesses.

b. Plaintiff was denied his State and Federal constitutional rights to due process, equal protection and a fair hearing when Defendant Wright acting as hearing officer, had ex parte communication with witnesses without disclosure "tot he" Plaintiff.

c. Plaintiff was denied his State and Federal constitutional rights to due process, equal protection and a fair hearing when Defendant Wright acting as hearing officer refused to admit the presentation of material evidence which would have exonerated Plaintiff.

d. Plaintiff was denied his State and Federal constitutional rights to due process, equal protection and a fair hearing when Defendant Wattles intentionally destroyed evidence that would have exonerated Plaintiff from the charge against him.

e. Plaintiff was denied his State and Federal constitutional rights to due process, equal protection and a fair hearing when Defendant Stapleton found that Plaintiff did not have a due process right to question facility witnesses and refused to answer Plaintiff's additional claim of error. (i.e., hearing officer[']s decision was based on ex parte communication with witnesses[.)]

(Compl., 4, docket #1.) For relief, Plaintiff seeks compensatory and punitive damages of $10,000 from each of the Defendants.

II. Immunity

Defendant Wright is a hearing officer whose duties are set forth at MICH. COMP. LAWS § 791.251 through § 791.255. Hearing officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections. *See* MICH. COMP. LAWS § 791.251(e)(6). Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed. *See* MICH. COMP. LAWS § 791.252(k). There are provisions for rehearings, *see* MICH. COMP. LAWS § 791.254, as well as for judicial review in the Michigan courts. *See* MICH. COMP. LAWS § 791.255(2). Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges. *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988). As such, they are entitled to absolute judicial immunity from inmates' § 1983

suits for actions taken in their capacities as hearing officers. *Id.*; *and see Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights). Defendant Hearings Administrator Stapleton also is entitled to absolute judicial immunity for his role in denying Plaintiff's motion for rehearing. *See Williams v. Bournay*, No. 98-1169, 1999 WL 196532, at *2 (6th Cir. Mar. 22, 1999).

Because Defendants Wright and Stapleton are immune from monetary damages, the only type of damages sought by Plaintiff, they must be dismissed from this action. Moreover, as discussed below, Plaintiff fails to state a claim against any of the named Defendants.

III. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has

not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. **Due Process**

Plaintiff claims that he was denied due process in the misconduct proceedings when the hearing officer relied upon ex parte communication with Officers Krueger and Landrum without notifying Plaintiff or giving him an opportunity to question them. He further contends that his due process right were violated when Defendant Wattles destroyed evidence that would have exonerated him, i.e., failed to photograph the cup of coffee.

The starting point for any discussion of the procedural due process rights of a prisoner subject to a disciplinary proceeding is *Wolff v. McDonnell,* 418 U.S. 539 (1974). In *Wolff,* the Supreme Court held that prison disciplinary proceedings must meet minimal due process requirements by (i) giving inmates advance written notice of charges at least 24 hours prior to the disciplinary hearing; (ii) allowing the inmate to call witnesses and present documentary evidence in the inmate's defense; and (iii) providing the inmate with a written statement of evidence relied on by the disciplinary board and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-69. Plaintiff does not dispute the first and third due process requirements of *Wolff*. Rather, Plaintiff's claims implicate the second due process requirement concerning witnesses and evidentiary matters.

"[N]ot much evidence is required to support the action of a prison disciplinary board." *Williams v. Bass,* 63 F.3d 483, 486 (6th Cir. 1995) (citing *Superintendent, Mass. Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 455 (1985)). The Supreme Court in *Hill* held that the requirements of due process are satisfied if "some evidence" supports the prison disciplinary board's decision to revoke good-time credits. *Hill*, 472 U.S. at 455. In determining whether a decision of a prison disciplinary board is supported by "some evidence", a federal court is "not required to examine the entire record, make an independent assessment of the credibility of witnesses, or weigh the evidence." *Williams,* 63 F.3d at 486 (citing *Hill,* 472 U.S. at 455). "Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Williams,* 63 F.3d at 486 (citing *Hill,* 472 U.S. at 455-56) (emphasis added). Moreover, the Constitution does not require that the evidence logically preclude any conclusion but the one reached by the hearings officer in the disciplinary proceeding. *Hill,* 472 U.S. at 456; *see also Falkiewicz v. Grayson,* 271 F. Supp. 2d 942, 948 (E.D. Mich. 2003), *aff'd*, 110 F. App'x 491 (6th Cir. 2004). A hearings officer in a prison disciplinary proceeding is not required to find the prisoner guilty beyond a reasonable doubt, or find that guilty was the only reasonable interpretation of the evidence. *Thomas v. Marberry,* No. 06-cv-13282, 2007 WL 1041250, at *2 (E.D. Mich. Apr. 4, 2007) (citing *Mullins v. Smith,* 14 F. Supp. 2d 1009, 1012 (E.D. Mich. 1998)). Further, "this court will not interfere with the discretion of prison authorities to define offenses under their internal rules and to assign offenses in particular cases." *Falkiewicz,* 271 F. Supp. 2d at 948 (citing *Turney v. Scroggy,* 831 F.2d 135, 139-40 (6th Cir. 1987)).

In this case, the Defendant Wright cited sufficient evidence to sustain the charges for theft and disobeying a direct order. Plaintiff claims that the hearing officer improperly relied upon statements made by Officers Krueger and Landrum outside of the hearing. "[T]he full panoply of rights due a defendant [in a criminal prosecution] does not apply" with regard to inmate disciplinary

hearings. *Wolff*, 418 U.S. at 556. Among other things, *Wolff* does not outlaw a conduct board's reliance on hearsay in resolving a charge of misconduct. *Wolff*, 418 U.S. at 567-68. Consequently, the hearing officer's reliance on Krueger and Landrum's statements did not violate his due process rights. *Wolff* also held that the accused in a prison disciplinary proceeding has no right to confront and cross-examine witnesses. *Id.* at 567-69. The Court explained:

> Confrontation and cross-examination present greater hazards to institutional interests. If confrontation and cross-examination of those furnishing evidence against the inmate were to be allowed as a matter of course, as in criminal trials, there would be considerable potential for havoc inside the prison walls. Proceedings would inevitably be longer and tend to unmanageability.

*Id.* at 567 (footnote omitted). Plaintiff, therefore, was not entitled to an opportunity to cross-examine Krueger and Landrum regarding their statements.

Plaintiff's due process right claim concerning Defendant Wattles' failure to photograph the cup of coffee also is without merit. Plaintiff admitted the coffee cup was half to three-quarters full. A photograph of the coffee cup would have been irrelevant because the issue before the hearing officer was whether Plaintiff disobeyed the order by continuing to pour after the order was issued, not whether the coffee cup was completely filled. Plaintiff, therefore, was not prejudiced by Defendant Wattles failure to photograph the coffee cup or otherwise document how much coffee was in the cup.

B.  **Equal Protection**

Plaintiff also generally asserts that his equal protection rights were violated in the misconduct proceedings. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not suggest that he is a member of a suspect class, and "prisoners are not

considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998). In addition, Plaintiff has not asserted the violation of a fundamental right.

Because neither a fundamental right nor a suspect class is at issue, the rational basis review standard applies. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Plaintiff makes no factual allegations whatsoever that he was intentionally treated differently from others similarly situated prisoners. Consequently, he fails to state an equal protection claim.

### C. **State Law**

Plaintiff asserts violations of the State of Michigan Constitution. Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). To the extent that Plaintiff's complaint presents allegations under state law, this Court declines to exercise jurisdiction. "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1

(6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993).

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: April 19, 2010                                /s/ Gordon J. Quist
                                         GORDON J. QUIST
                                   UNITED STATES DISTRICT JUDGE